J-S33016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TERRY RICHARD GARLOCK | : | |
| | : | |
| Appellant | : | No. 1575 MDA 2016 |

Appeal from the PCRA Order August 18, 2016
In the Court of Common Pleas of Franklin County
Criminal Division at No(s):  CP-28-CR-0001393-2010

BEFORE:   BENDER, P.J.E., OTT, J. and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED SEPTEMBER 19, 2017**

Terry Richard Garlock appeals from the order entered August 18, 2016, in the Court of Common Pleas of Franklin County, denying his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S § 9541 *et seq.* Garlock seeks relief from the judgment of sentence to serve 22 ½ to 45 years' incarceration after he was found guilty by a jury of various sexual offenses.  In this timely appeal, Garlock raises one issue, with a variety of subparts.  After a thorough review of Garlock's brief,[1] the certified record and relevant law, we conclude the PCRA court erred in failing to find trial

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The Commonwealth did not file a brief.

counsel was ineffective in not filing a notice of alibi defense. Therefore, we reverse and remand for a new trial.

Our standard of review is well settled.

> "[A]s a general proposition, we review a denial of PCRA relief to determine whether the findings of the PCRA court are supported by the record and free of legal error." **Commonwealth v. Dennis**, 609 Pa. 442, 17 A.3d 297, 301 (2011) (citation omitted). A PCRA court's credibility findings are to be accorded great deference, and where supported by the record, such determinations are binding on a reviewing court. **Id.**, at 305 (citations omitted). To obtain PCRA relief, appellant must plead and prove by a preponderance of the evidence: (1) his conviction or sentence resulted from one or more of the errors enumerated in 42 Pa.C.S. § 9543(a)(2); (2) his claims have not been previously litigated or waived, **id.**, § 9543(a)(3); and (3) "the failure to litigate the issue prior to or during trial ... or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel[,]" **id.**, at § 9543(a)(4). An issue is previously litigated if "the highest appellate court in which [appellant] could have had review as a matter of right has ruled on the merits of the issue [.]" **Id.,** § 9544(a)(2). "[A]n issue is waived if [appellant] could have raised it but failed to do so before trial, at trial, ... on appeal or in a prior state postconviction proceeding." **Id.,** § 9544(b).
>
> To be entitled to relief on an ineffectiveness claim, a PCRA petitioner must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. **Commonwealth v. Chmiel**, 612 Pa. 333, 30 A.3d 1111, 1127 (2011) (employing ineffective assistance of counsel test from **Commonwealth v. Pierce**, 515 Pa. 153, 527 A.2d 973, 975-76 (1987)). Counsel is presumed to have rendered effective assistance. **Commonwealth v. Ali**, 608 Pa. 71, 10 A.3d 282, 291 (2010). Additionally, counsel cannot be deemed ineffective for failing to raise a meritless claim. **Commonwealth v. Jones**, 590 Pa. 202, 912 A.2d 268, 278 (2006). Finally, because a PCRA petitioner must establish all the

*Pierce* prongs to be entitled to relief, we are not required to analyze the elements of an ineffectiveness claim in any specific order; thus, if a claim fails under any required element, we may dismiss the claim on that basis. *Ali,* at 291.

*Commonwealth v. Treiber*, 121 A.3d 435, 465 (Pa. 2015) (footnote omitted).

We preface this decision with the necessary observation that Garlock was tried pursuant to a bill of information that provided a specific timeframe for the charged offenses, for which Garlock had an alibi defense, which was known to trial counsel and which was known or should have been known by the Commonwealth.

On June 26, 2012, a jury found Garlock guilty of attempted involuntary deviate sexual intercourse, aggravated indecent assault, and indecent assault.[2] These charges arose from two incidents in which Garlock touched the victim's breasts and genitals; during one of those incidents, Garlock also requested the victim perform oral sex on him. The victim, J.M., was nine or ten years old at the time. She was also the daughter of Garlock's paramour, with whom he lived.

Following a hearing, Garlock was determined to be a sexually violent predator and was sentenced as stated above. Garlock filed a timely direct appeal that afforded him no relief.[3] *See Commonwealth v. Garlock*, 104

_____

[2] 18 Pa.C.S. §§ 901(a), 3125(b), and 3126(a)(7), respectively.

[3] Garlock challenged the discretionary aspect of his sentence.

- 3 -

A.3d 58 (Pa. Super. May 23, 2014) (unpublished memorandum).  On June 23, 2015, the last available day, Garlock filed this timely PCRA petition, raising various claims of ineffective assistance of trial counsel.

Before we address these specific claims, a review of the testimony from the trial is necessary.  The notes of testimony reveal that in April, 2004, Garlock met S.M. over the internet.  After a brief period, Garlock moved in with S.M.  J.M., S.M.'s daughter,F also lived in the home; she was approximately nine or ten years old at the time.  A.M., J.M.'s half-sister, lived in the home as well, although she had dropped out of high school and was spending some of her time, including nights, with her boyfriend, in his parent's home.  Pursuant to J.M.'s testimony, at some point, apparently while Garlock lived in the home, he came into her room while S.M. was at work, and,

> …laid down next to her, and began touching her breast. He proceeded to then touch her over clothes, and eventually began to digitally penetrate her.  At the same time he was touching J.M., [Garlock] exposed and fondled himself in front of her. Appellant also took J.M.'s hand and put it on his penis. He asked J.M. to kiss his penis, to which she refused. After the incident, Appellant told J.M. not to tell anyone because no one would believe her. A second, similar incident, occurred about one month later, at which point [Garlock] proceeded to try to climb on top of J.M. J.M. was able to move away and Appellant again told her not to tell anyone, that no one would believe her. J.M. did not tell anyone about the incidents for several years until she was about 15 years old, when she eventually relayed the information to her sister, A.M., and inevitably the authorities.

*Commonwealth v. Garlock*, *supra*, at *1 (record citations omitted).  We note for clarity that J.M told her sister of the incidents in 2009,

- 4 -

approximately five years after the fact. Garlock was interviewed by the police on September 17, 2009.[4] Subsequently, the police interviewed J.M. on December 9, 2009 and February 20, 2010. Relevant to the instant issue, Garlock informed the police that he met S.M. on the internet in April, 2004, and had moved in with her by the end of that month. The police also spoke with Leann Briggs of the Franklin County CYS, which had already conducted its own investigation.

The criminal complaint provided the time of the incidents as having occurred between February 14, 2003 and February 14, 2005. *See* Criminal Complaint; N.T. Trial, 6/25/2012, at 183. The complaint, therefore, includes the time during which Garlock lived with S.M. and her daughters. However, on September 1, 2010, the Commonwealth filed bills of information charging Garlock with the above-mentioned crimes, and alleging those crimes took place between February 14, 2003 and February 14, 2004. The only explanation the Commonwealth provided for changing the dates from the

---

[4] Garlock also met with the police on two or three other occasions. However, those dates are not in the notes of testimony. These subsequent meetings involved attempts to perform voluntary polygraph tests on Garlock, and therefore are not relevant to this discussion.

The police also spoke with J.M.'s mother, S.M., but the details of that interview were not related at trial other than to note that S.M., at the time, had no idea of the incidents at issue herein. At trial, S.M. confirmed that she met Garlock on the internet in 2004 and that he moved in a couple of months later.

complaint to the bills of information was, "…Your Honor, after I met with the victim and we further discussed it we narrowed it down to 2/14/03 to 2/14/04." N.T. Trial, 6/25/2012, at 183.

At trial, neither J.M., A.M. (J.M.'s half-sister), nor S.M. testified to a specific time that Garlock lived in their household. Only Corporal Mark Grove, a Pennsylvania State Police trooper, provided the specific date, testifying to the April, 2004 date Garlock had told him in the September 2009 interview. At the close of the Commonwealth's case, there was testimony showing Garlock had sexually assaulted J.M. twice, with a strong inference that the two incidents took place post-April, 2004.

A conference was held between counsel and the trial judge before the defense presented any evidence. Defense counsel demurred, claiming there was no evidence that Garlock had committed any crime between the dates listed on the bills of information. The trial court denied the motion explaining the evidence was vague and the jury would determine when the crimes took place. At that time, defense counsel revealed that he intended to present evidence that Garlock had been deployed away from the local area, in Georgia, U.S.A., and Kosovo, Europe, for the entire time covered by the bill of information. The Commonwealth objected to this potential evidence, arguing Garlock had not provided the Commonwealth with a notice of alibi. Defense counsel admitted he had known that Garlock was not in Pennsylvania during the time covered by the bill of information, but the

defense was prepared addressing the entire time period covered by the *complaint*. Trial counsel did not believe the deployment information was as much an alibi as it was impeachment material. The trial court excluded the proposed evidence.

In response to Garlock's attempt to present evidence of his deployment, the Commonwealth sought to amend the bills of information to include the year from February 14, 2004 to February 15, 2005, as originally listed in the criminal complaint. No objection was raised. Although Garlock was not allowed to provide the details, including the location, of his military service, he was allowed to testify he was on active duty from March, 2003 to April, 2004.

At the PCRA hearing, held January 7, 2016, trial counsel for Garlock testified his general approach to attack the Commonwealth's case was to highlight the many inconsistencies in the case. Trial counsel believed that the lengthier the period of time charged by the Commonwealth, the less credible the allegations became. Nevertheless, trial counsel was aware that Garlock was out of the jurisdiction for the time listed in the bill of information and that it would have been very difficult for the Commonwealth had they been forced, prior to trial, to "change their story"[5] in response to

---

[5] N.T. PCRA Hearing, 1/7/2016, at 13.

Garlock's alibi. Trial counsel agreed that such an attempt "would have been an even larger knock to their credibility." *Id*.

We turn now to examine Garlock's specific allegations of ineffective assistance of counsel. Garlock's first claim raises three subsections. He argues trial counsel was ineffective for,

> Failing to make a motion for judgment of acquittal, failing to provide a notice of alibi and allowing the Commonwealth to amend the criminal information to include additional year in which the alleged crimes could have occurred.

Appellant's Brief at 16.

We commence our analysis with the failure to file a notice of alibi, and allowing the Commonwealth to amend the bills of information after the Commonwealth's case had closed, which are intertwined.

Initially, regarding the failure to file a notice of alibi, Garlock's counsel testified at the PCRA hearing he was not concerned about the alibi because the criminal complaint included dates that Garlock admitted he had lived in the same household as J.M. Accordingly, he felt he could use the information that Garlock was not in the jurisdiction to impeach J.M.'s credibility. The PCRA court found this to be a reasonable strategy and denied this aspect of Garlock's claim. However, this result ignores the fact that the only times listed on the bills of information were times for which Garlock had an absolute alibi. The Commonwealth, despite knowing that Garlock did not move into the S.M. household until on or after April, 2004, changed the dates from the criminal complaint to the bill of information's

- 8 -

timeframe that excluded the time Garlock lived with J.M. As noted above, according to the Assistant District Attorney, this change was made knowingly after discussions with J.M. In addition, during the PCRA hearing, defense counsel admitted that it would have been very damaging to the credibility of the Commonwealth's case to change its version of the events in response to Garlock's alibi. *See* N.T. PCRA Hearing, 1/7/2016, at 12-13.

Accordingly, filing an alibi would have provided the defense a two-pronged attack on the Commonwealth's case. One, providing an absolute alibi for the times listed on the bills of information and, two, providing the defense with an additional avenue to attack the credibility of the Commonwealth's case. The second prong is consistent with the defense's stated trial strategy.

Counsel is not ineffective when the chosen course of action fits a reasonable strategy. However, the PCRA court erred in determining counsel's ignoring of the alibi constituted a reasonable strategy.

The second aspect of the claim is counsel's failure to object to the Commonwealth re-opening its case and amending the bills of information to include a year for which Garlock did not have an alibi. The PCRA court determined the amendment was allowable as no prejudice to Garlock occurred. The PCRA court reasoned that Garlock had been aware of the extended dates and Garlock, in fact, admitted to having lived in the S.M. household during those dates. Garlock has argued that is immaterial

because the Rules of Criminal Procedure do not contemplate the amendment of a bill of information after the trial has begun.

Pennsylvania Rule of Criminal Procedure 564 addresses Amendment of Information, and states, *in toto*:

> The court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564.

The rule itself provides no limitation of time for the amendment of a bill of information, which tends to support the PCRA court's interpretation. However, Rule 564 is located in Chapter 5 addressing "Pretrial Procedures in Court Cases". This context clearly indicates amendment of a bill of information is intended to occur pretrial. *See also Commonwealth v. Picchianti*, 600 A.2d 597, 599 (Pa. Super. 1991) (if there is no showing of prejudice, amendment of information to add an additional charge is proper *even on the day of trial*) (emphasis added); *Commonwealth v. Womack*, 453 A.2d 642 (Pa. Super. 1982) (same). Although at trial, the Commonwealth indicated it had case law allowing amendment of bills of information in the middle of trial, *see* N.T. Trial, 6/25/2012, at 184-85, the

Commonwealth has not supplied those cases,[6] nor have we been able to locate any case law specifically allowing such late amendment.

In any event, the late amendment is intertwined with the alibi issue. Our reading of the certified record reveals the defense decision to allow the Commonwealth to amend the bill of information without objection was part of the same strategy of ignoring the alibi. If Garlock had provided timely notice of his alibi to the Commonwealth, the Commonwealth either would have been forced to amend the bills prior to trial or would have seen the case fail upon the showing that Garlock was out of the jurisdiction during the timeframe of the bill of information. At the PCRA hearing, trial counsel admitted that amendment of the bills in response to the alibi would have benefitted the defense, and certainly a successful alibi defense would have been in Garlock's interest.[7]

In sum, we conclude the PCRA court erred in finding that trial counsel was effective where counsel failed to provide the Commonwealth with notice of alibi for the timeframe covered by the bill of information. Filing said notice of alibi would not have adversely affected Garlock's challenge to the credibility of the Commonwealth's case. Furthermore, the alibi would have

---

[6] Case names are not included in the certified record and the Commonwealth did not file a brief with this Court.

[7] Because of our resolution of this matter, we need not address Garlock's other claims.

added an absolute defense, if the Commonwealth failed to amend the bills of information, or an additional platform from which to defend the case against him. Therefore, there was no reasonable strategic reason for failing to provide the Commonwealth with the notice of alibi.

In light of the foregoing, we reverse the PCRA court order denying Garlock relief on his petition filed pursuant to the Post Conviction Relief Act, and remand for a new trial.

Order reversed. Judgment of sentence is vacated. This matter is remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/19/2017

- 12 -